IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CREDIT ACCEPTANCE CORPORATION                                    PLAINTIFF

v.                                                CIVIL ACTION NO. 1:17-cv-00040-GHD-DAS

ROBIE VANSTEENBURGH
a/k/a Robbie Vansteenburgh                                       DEFENDANT

## MEMORANDUM OPINION GRANTING
## PLAINTIFF'S MOTION TO COMPEL ARBITRATION

Presently before the Court is Plaintiff Credit Acceptance Corporation's motion to compel arbitration [6]. Upon due consideration, the Court finds that the motion should be granted.

### I.    *Factual and Procedural Background*

On March 13, 2017, Plaintiff Credit Acceptance Corporation ("Credit Acceptance") filed this suit against Defendant Robie Vansteenburgh, also known as Robbie Vansteenburgh ("Vansteenburgh"). On March 24, 2017, Vansteenburgh filed an answer [5] to the complaint [1]. Subsequently, on April 3, 2017, Vansteenburgh filed the present motion to compel arbitration [6]. Credit Acceptance filed a response in opposition [9], and Vansteenburgh filed a reply [10]. The matter is now ripe for review.

On July 28, 2015, Vansteenburgh electronically executed a Retail Installment Contract for the purchase of a 2004 GMC Sonoma (the "vehicle") from Jerry Willis Motors LLC ("Jerry Willis Motors"). It is undisputed that the Retail Installment Contract, which was assigned to Credit Acceptance, includes an arbitration agreement. Credit Acceptance avers that Vansteenburgh attempted to circumvent this arbitration agreement by filing suit against Credit Acceptance, Jerry Willis Motors, and Jerry Willis in the Circuit Court of Itawamba County in Civil Action No. CV17-

1

038PI, wherein Vansteenburgh alleged that those parties unlawfully and wrongfully repossessed the vehicle. Credit Acceptance maintains that the alleged arbitration agreement applies to the claims asserted by Vansteenburgh in the state court action, that Vansteenburgh validly agreed to arbitrate, and that Vansteenburgh is bound by the terms of the arbitration agreement. Vansteenburgh argues in response that his state court claims do not fall within the scope of the arbitration agreement, and thus, that arbitration of his state court claims is not warranted.

## II.  *Analysis and Discussion*

As stated above, Credit Acceptance moves the Court to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration Act (the "FAA") based on the arbitration agreement contained in the Retail Installment Contract, and specifically argues, *inter alia*, that the arbitration agreement is valid and enforceable with respect to Vansteenburgh's state court claims against Credit Acceptance *inter alii*.

### A. Background of the Law on Arbitration

In 1925, Congress enacted the FAA in response to the longstanding, widespread judicial hostility to arbitration agreements that existed at English common law and was adopted by American courts. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492–93 (5th Cir. 2006).[1] "The FAA provides that a 'written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

---

[1] In 1947, Congress reenacted and codified the FAA as Title 9 of the United States Code.

2

or in equity for the revocation of any contract.'" *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (quoting 9 U.S.C. § 2). It "requires courts to enforce the bargain of the parties to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985), and "reflects an emphatic federal policy in favor of arbitral dispute resolution," *KPMG LLP v. Cocchi*, 565 U.S. 18, 21, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (internal quotation marks omitted)). The FAA

> does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the [FAA] makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R. REP. NO. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.

*Dean Witter Reynolds, Inc.*, 470 U.S. at 219–20, 105 S. Ct. 1238. Because "arbitration is a matter of contract," courts must "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, —— U.S. ——, ——, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013). Thus, arbitration may be compelled only if the parties agreed to arbitrate the dispute in question. *See* 9 U.S.C. § 4; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010); *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (per curiam).

Against this backdrop, the Court assesses whether the parties agreed to arbitrate the dispute in question using a two-step process: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *See Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195 (5th Cir.), *cert.*

3

*denied*, 137 S. Ct. 373, 196 L. Ed. 2d 292 (2016). If the Court finds that the parties have a valid agreement to arbitrate and that the dispute is within the scope of the arbitration agreement, the Court generally examines whether any legal constraints foreclose arbitration of those claims. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. 3346). Courts must "apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but . . . do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). The determination of whether a party is bound by an arbitration agreement is included within the broader issue of whether the parties agreed to arbitrate. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999)). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2); *see Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) ("[a]rbitration is a matter of contract between the parties").

i. **Subject Arbitration Provision**

With the foregoing case law in mind, the Court examines whether the parties in the case *sub judice* agreed to arbitrate the dispute, that is, whether a valid arbitration agreement exists, and

if so, whether the dispute is within the scope of the arbitration agreement.

As stated above, Vansteenburgh purchased a used 2004 GMC Sonoma from Jerry Willis Motors, and as part of that transaction, electronically signed the subject Retail Installment Contract. Neither Vansteenburgh nor Credit Acceptance dispute that the Retail Installment Contract contains a valid arbitration provision or that there are no external constraints that preclude arbitration of the claims brought by Vansteenburgh in state court. Thus, the central question is whether the arbitration provision covers the claims alleged in Vansteenburgh's state court complaint. *See Ford Motor Co. v. Ables*, 207 F. App'x 443, 446 (5th Cir. 2006) (per curiam). In addressing questions of scope, this Court is mindful that " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.' " *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 475–76, 109 S. Ct. 1248). "Arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.' " *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

The Court examines the pertinent arbitration clause at issue in the case *sub judice*. The Retail Installment Contract [1-1] provides in pertinent part as follows:

> ARBITRATION NOTICE: PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT. . . .
>
> ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE ADDITIONAL

PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED BY REFERENCE.

Notice to the Buyer: 1. Do not sign this contract before you read it . . . .

[Jerry Willis Motors] has assigned this Contract to [Credit Acceptance] . . .

[Jerry Willis Motors] gives [Credit Acceptance] full power, either in [Credit Acceptance's] name or in [Jerry Willis Motors'] name, to take all actions which [Jerry Willis Motors] could have taken under this Contract.

AGREEMENT TO ARBITRATE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. . . . .

Your Right to Reject: If [Vansteenburgh] do[es not] want this Arbitration Clause to apply, [Vansteenburgh] may reject it by mailing [Jerry Willis Motors or Credit Acceptance] . . . a written rejection notice that describes the contract and tells [Jerry Willis Motors or Credit Acceptance] that [Vansteenburgh is] rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers[,] and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If [Vansteenburgh] reject[s] this Arbitration Clause, that will not affect any other provision of this Contract or the status of [Vansteenburgh's] Contract. If [Vansteenburgh does not] reject this Arbitration Clause, it will be effective as of the date of this Contract.

<u>A "Dispute" is any controversy or claim between [Vansteenburgh] and [Jerry Willis Motors or Credit Acceptance] arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this contract, . . . . "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort . . . or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action</u>

> brought by [Vansteenburgh] in small claims court or [Vansteenburgh's] state's equivalent court, unless such action is transferred, removed[,] or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon [Vansteenburgh's] default and any exercise of the power of sale or the Vehicle under this Contract or any individual action by [Vansteenburgh] to prevent [Jerry Willis Motors or Credit Acceptance] from using any such remedy, so long as such individual action does not include a request for monetary relief of any kind. . . . [D]isputes about the validity, enforceability, coverage[,] or scope of this Arbitration Clause or any part thereof . . . are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide. . . .
>
> Either [Vansteenburgh] or [Jerry Willis Motors or Credit Acceptance] may require any Dispute to be arbitrated and may do so . . . after a lawsuit has been started over the Dispute . . . . If [Vansteenburgh] or [Jerry Willis Motors or Credit Acceptance] elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. . . .
>
> If [Vansteenburgh] or [Jerry Willis Motors or Credit Acceptance] elect to arbitrate a Dispute, neither [Vansteenburgh] nor [Jerry Willis Motors or Credit Acceptance] will have the right to pursue that Dispute in court or have a jury resolve that dispute. . . .
>
> . . .
>
> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

Retail Installment Contract [1-1] at 1, 2, 3, 4, 5 (emphasis added).

The entirety of Vansteenburgh's argument in opposition to Credit Acceptance's motion to compel arbitration is as follows: "[T]his dispute does not involve any dispute about the purchase agreement for a car between the parties. It involves the tort of conversion through intent or through negligence. There is no dispute about payments, contract, etc." Def.'s Resp. Opp'n to Pl.'s Mot.

Compel Arbitration [9] at 1. Credit Acceptance argues in its reply brief that Vansteenburgh provides no legal authority for his position and that Vansteenburgh's tort claims are arbitrable because they fall within the scope of the arbitration agreement in the Retail Installment Contract.

Credit Acceptance's arguments are well taken. Although Vansteenburgh's state court claims may "involve the tort of conversion through intent or through negligence," *see* Def.'s Resp. Opp'n to Pl.'s Mot. Compel Arbitration [9] at 1, the claims nonetheless fall within the scope of the subject arbitration clause. The arbitration clause defines "dispute" as "any controversy or claim between [Vansteenburgh] and [Jerry Willis Motors or Credit Acceptance] arising out of or in any way related to this [Retail Installment] Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this contract, . . . ." Retail Installment Contract [1-1] at 5. The arbitration clause further describes dispute as follows: " 'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort . . . or any other legal or equitable theories." *Id.* Based upon this language, Vansteenburgh's state law claims which, according to Vansteenburgh, sound in tort, fall within the scope of the clause. The limitation on the breadth of the scope of the arbitration agreement is found in the following subsequent language: "Notwithstanding the foregoing, 'Dispute' does not include any individual action brought by [Vansteenburgh] in small claims court or [Vansteenburgh's] state's equivalent court, unless such action is transferred, removed[,] or appealed to a different court." *Id.* The state court complaint was filed by Vansteenburgh in the Circuit Court of Itawamba County, which is not a small claims court or equivalent court and has "original jurisdiction in all actions when the principal of the amount in controversy exceeds two hundred dollars [$200.00]." MISS. CODE ANN.

§ 9-7-81.[2] Therefore, the foregoing sentence in the arbitration agreement does not restrict the claims at issue in this case from falling within the scope of the subject arbitration clause. The arbitration agreement's scope is further limited by the following sentence: " 'Dispute' does not include any repossession of the Vehicle upon [Vansteenburgh's] default and any exercise of the power of sale or the Vehicle under this Contract or any individual action by [Vansteenburgh] to prevent [Jerry Willis Motors or Credit Acceptance] from using any such remedy, so long as such individual action does not include a request for monetary relief of any kind." *Id.* In the state court case, Vansteenburgh alleges in his complaint that the "repossession [of his vehicle] was unlawful and wrong"; constituted "gross, willful, wanton" negligence; and also constituted "wrongful conversion." State Ct. Compl. [1-3] ¶¶ 9, 12–13. His state court claims clearly evidence an attempt to prevent Credit Acceptance from using the remedy of repossession, which could in some circumstances call into question whether the claims fall within the scope of the arbitration agreement. However, the dispositive phrase in the subject arbitration agreement is "as long as such individual action does not include a request for monetary relief of any kind." *See* Retail Installment Contract [1-2] at 5. In the state court case, Vansteenburgh requests "actual and consequential damages," as well as "punitive damages . . ., attorney['s] fees, and court costs." State-Ct. Compl. [1-3] ¶¶ 12–13. Due to the self-proclaimed broad scope of the arbitration agreement at issue, including that the scope includes tort claims, and because Vansteenburgh's state court complaint against Credit Acceptance clearly seeks monetary damages for the alleged wrongful possession of the vehicle, Vansteenburgh's state court claims against Credit Acceptance

---

[2] In Mississippi, justice courts have "jurisdiction of all actions for the recovery of debts or damages or personal property, where the principal of the debt, the amount of the demand, or the value of the property sought to be recovered shall not exceed Three Thousand Five Hundred Dollars ($3,500.00)." MISS. CODE ANN. § 9-11-9.

fall within the scope of the arbitration agreement. Therefore, the arbitration agreement is valid and enforceable. Credit Acceptance's motion to compel arbitration must be granted.

"[U]pon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," a court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. This Court has discretion to dismiss a case in favor of arbitration, *see Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999); "[t]he weight of authority clearly supports dismissal of a case when all of the issues raised in the district court must be submitted to arbitration," in which case "retaining jurisdiction and staying the action [would] serve no purpose," *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Court is of the opinion that the case *sub judice* should be dismissed, as its limited purpose was to seek arbitration of the claims in the state court lawsuit. *See* Pl.'s Compl. [1] ¶¶13–15.

## B. Conclusion

For the foregoing reasons, Plaintiff Credit Acceptance Corporation's motion to compel arbitration [6] is GRANTED; the matter is REFERRED TO ARBITRATION; and this case is DISMISSED.

An order in accordance with this opinion shall issue this day.

THIS, the 11th day of October, 2017.

_____
SENIOR U.S. DISTRICT JUDGE